LANGMADE & EVANS, plaintiffs in error, *vs.* OTTAWAY B. GLENN *et al.*, defendants in error.

1. When attorneys are ruled by their clients for money collected, and not for failing to collect, they cannot be held to answer, on that rule, for more than the sum actually collected.

2. In the present case, the attorneys fully accounted for all the money they received, and the verdict against them was not supported by the evidence, as applied to the rule *nisi.*

Attorney and client.  Rule.  New trial.  Before Judge JOHNSON.  Washington Superior Court.  November Adjourned Term, 1875.

Ottaway B. Glenn and James S. Hook, as administrators of William Glenn, deceased, ruled Langmade & Evans, as attorneys at law, for money alleged to have been collected by them, on an execution in favor of movants against Susan S. Adams, as administratrix of Jordan S. Adams, deceased, and John J. Adams, administrator of Benjamin Adams, deceased, security, for $1,981 00, with interest from March 6th, 1861. The answer of Langmade & Evans presented the following facts :

In the year 1865, Ottaway B. Glenn placed in respondents' hands, for collection, a note for $1,980 00, signed by Jordan S. Adams, as principal, and Benjamin Adams, as security, both of the makers being dead, the estate of the latter being unrepresented, or the twelve months from his death having not yet expired, so as to authorize suit.  Judgment was recovered against the estate of the principal, and a levy made, out of which tedious litigation arose, which resulted in a decision of the supreme court adverse to the claim represented by respondents.  Thus all hope was cut off of ever realizing anything from the estate of the principal.  Suit was then instituted and judgment recovered against the estate of Benjamin Adams.  A homestead was taken out for the minor children, which covered the entire property.

In the year 1866, one James J. Kennedy placed claims in respondents' hands for collection against said Ottaway B. Glenn, amounting to about $1,000 00.  These debts being about to be sued, said Glenn proposed to take up the same by the transfer to Kennedy of the claim on the Adams' estates as collateral security.  The proposition was accepted, Glenn's notes given up, and the transfer made.

In the year 1867, respondents represented claims against Glenn in favor of James Burns, amounting to more than $1,006 00, upon which judgment had been obtained.  Glenn

proposed to transfer the claim against the Adams estates, in satisfaction of this indebtedness. The proposition was accepted, the obligations on Glenn surrendered, and the transfer made.

After seven years of litigation, with very little prospect of success in realizing thereon, respondents, with the full concurrence and approbation of Glenn, effected a compromise of the claim against the Adams' estates, by which they realized $1,550 00 in cash, and an execution against said Glenn, amounting to $907 00. The money thus realized has been appropriated to the claims of Kennedy, and Burns, after deducting counsel fees due to respondents by said parties.

Respondents claim that said Glenn is indebted to them $500 00 for professional services for which they pray judgment.

A traverse was filed to this answer, and the issue thus formed was submitted to a jury.

The only material point upon which the evidence was conflicting was as to the authority of respondents to make the compromise which was effected with the Adams' estates, and under the decision this question was not properly before the superior court in the then state of the pleadings.

The testimony showed that all the money collected under the aforesaid compromise had been paid over to the assignees of Glenn, less one-half thereof retained by respondents, under contract with such assignees for fees.

The note upon which the judgment against the Adams' estate was obtained, was payable to James S. Hook and O. B. Glenn, administrators *de bonis non,* or bearer. It was sued in the name of Glenn, as bearer.

The jury found for plaintiffs $275 00, with interest from time of settlement; they also found that the attorney's fees had been paid. The respondents moved for a new trial upon numerous grounds, which may be condensed into the one that the verdict was against the law and the evidence. The motion was overruled, and respondents excepted.

R. W. CARSWELL; LANGMADE & EVANS, for plaintiffs in error.

HOOK & WEBB, for defendants.

BLECKLEY, Judge.

1. When a rule is brought, as this was, for money collected, the actual collection measures the amount to be accounted for. When, on the other hand, the complaint is of neglect of duty in failing to collect, the measure of liability is what might have been collected by the use of due diligence: 7 *Georgia Reports*, 144. There may be some doubt whether, under the Code, (see section 3946, *et seq.*,) the remedy by rule is available in the latter case at all, or whether the failure to exercise diligence is not matter to be redressed by action only. But assuming both matters to be equally cognizable by rule, doubtless both might be joined in the same rule; that is, the attorneys could be proceeded against at the same time and by the same process to compel them to pay over so much as had been collected, and to respond for their failure to collect more. But here there is, on the face of the rule *nisi*, no intimation of any default except withholding the money collected. If the evidence before the jury showed a legal and rightful application of that money, the rule was well answered and should have been discharged. It will not do to sue, by rule or otherwise, for one thing and recover for another. The records of a court of record must show what causes of action have been litigated. Such records frequently become important evidence in other proceedings. Thus, this very rule, with the verdict and the judgment thereon, might possibly be introduced on the trial of an indictment against the attorneys for larceny after a trust delegated.

2. Confining the rule to the matters of complaint alleged in it, the uncontradicted evidence was, that the attorneys had accounted with certain creditors of Glenn for all the money realized, and that these creditors held debts more than sufficient to absorb it, which debts were secured by Glenn's assignment

of the Adams claim as collateral security. The money was the produce of the Adams claim, and the creditors who controlled the claim as collateral, had, by reason of the assignment, Glenn's authority to receive it. Their right to it was what his had been before the assignment was made, and as no point was made upon his authority to pledge the claim to secure his individual debts, (that position being conceded in the argument) payment to his assignees should work the same discharge to the attorneys as payment directly to him. The assignees having given Glenn credit for the whole sum received, and remitted a balance still in their favor, it was no injury to him that they allowed to their own attorneys one-half of the money as fees. That these attorneys were the same persons who, as attorneys for Glenn or for Glenn and. Hook, raised the money, makes no difference. There is no incompatibility in representing the owner of a claim and those to whom the owner has assigned it, while in process of collection, as security for admitted indebtedness.

If Glenn assented to the compromise by which the money was realized, he has no cause to complain, for all that was realized has been accounted for. If he did not assent to it, proper allegations can be made in the appropriate proceeding, and the real case, according to the facts, be presented for trial. As it is, we have a rule for not paying over money collected; all the money collected was realized by a certain compromise; that compromise is repudiated by those who have brought the rule.

Judgment reversed.